**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CHARLETTE and RICKY CALDWELL,**

                                **Plaintiffs,**              **09-CV-00945(Sr)**

**v.**

**GLENN S. GOORD, ANTHONY ANNUCCI,**
**LEONARD MANCINI, DONALD SELSKY,**
**CURTIS DROWN, CALVIN WEST,**
**ROBERT WOODS, DARWIN LACLAIR, and**
**CAPTAIN WENDERLICH,**

                                **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #17.


Ricky Caldwell, an inmate of the New York State Department of Correctional Services ("DOCS"), and his wife, Charlette Caldwell, commenced this action pursuant to 42 U.S.C. § 1983, alleging that defendants deprived plaintiff Charlette Caldwell of due process in determining that her visitation privileges should be suspended indefinitely and deprived plaintiff Ricky Caldwell of due process during the course of a prison disciplinary hearing.  Dkt. #1.


In lieu of answer, defendants move for summary judgment on all of plaintiffs' claims except Ricky Caldwell's claim of denial of due process in the course of a disciplinary hearing against defendants Wenderlich and Selsky.  Dkt. #24.

Plaintiffs' cross move for summary judgment.  Dkt. #29.

For the following reasons, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

## BACKGROUND

By letter dated February 11, 2005, Elmira Correctional Facility ("Elmira"), Superintendent Calvin West notified plaintiff Charlette Caldwell that her visiting privileges were suspended due to her "intentional conspiracy to introduce contraband drugs into this Facility."  Dkt. #1, p.5.

On February 11, 2005, Ricky Caldwell was charged in an inmate misbehavior report authored by Investigator Hawes with drug possession, smuggling, call forwarding/third party calls, and exchanging PINS.  Dkt. #41, p.24.  Specifically, the inmate misbehavior report alleges that

> Inmate did violate said department rules in that he conspired and solicited with his wife Charlette Caldwell and Tia Hurd to smuggle drugs into the Elmira CF.  Tia Hurd the visitor of Inmate James Smith 92-A02048 was arrested by Investigators on 12/26/04 at the Elmira CF after smuggling drugs into this facility.  A phone call that was made by Inmate Caldwell on said date and time using the inmate Pin # of 02-A-4010 revealed that Tia Hurd did receive said drugs from Charlette Caldwell which was also confirmed in a voluntary statement give to Investigators upon the arrest. This report is a result of an ongoing Narcotics Investigation being conducted by the NYSDOCS Inspector Generals Office.

Dkt. #41, p.24.

A Tier III disciplinary hearing commenced on February 15, 2005.  Dkt. #41, p.29.  Commissioner's Hearing Officer ("CHO"), Wenderlich found Ricky Caldwell guilty of all charges and imposed a penalty, *inter alia*, of 2 years in the Special Housing Unit.  Dkt. #41, p.141.  Upon administrative appeal, Donald Selsky, Director of Special Housing/Inmate Disciplinary Program, affirmed the findings of the hearing.  Dk. #41, p.153.

By Memorandum Decision dated July 11, 2005, CHO Curtis P. Drown affirmed the indefinite suspension of Charlette Caldwell's visiting privileges upon appeal. Dkt. #25, p.8.  In support of the decision, CHO Drown relied upon the following:

> Investigator P. Hawes of Inspector General's office testified on behalf of the Department.  On December 26, 2004 a visitor was arrested for trafficking drugs into Elmira Correctional Facility.  Inv. Hawes testified that the arrest was a result of knowledge gained through listening to an audiotape of a telephone conversation between Inmate and Visitor, a "third party" call using another inmate's PIN number.  The tape was presented by the Department.  According to the testimony, Inmate and Visitor were engaged in ongoing illegal drug smuggling and sales at the facility.  Inmate also testified that disbursement records of other inmates indicate drug payments in the hundreds of dollars were being forwarded to Visitor's residence.  Inv. Hawes testified that the arrested coconspirator, who implicated Visitor, possessed both marijuana and heroin.  Inv. Hawes also testified that on February 15, 2005, Visitor admitted to using visitors as "mules" to bring drugs into the facility, but stated that she had never brought the drugs into the facility herself.

Dkt. #25, p.9.  By Decision dated September 2, 2005, Leonard Mancini, Associate Counsel for DOCS, affirmed the CHO's decision and advised Charlette Caldwell that "she can request a reconsideration of her indefinite visitation suspension after one year."  Dkt. #25, p.12.

By Memorandum dated February 22, 2006, Upstate Correctional Facility Superintendent R.K. Woods denied Ricky Caldwell's request for restoration of visitation privileges due to plaintiff's disciplinary history of eight drug-related violations.  Dkt. #1-2, p.22.  Superintendent Woods denied another request for reconsideration on July 6, 2006 following his review of the circumstances at Elmira.  Dkt. #1-2, p.23.

By Memorandum and Judgment issued November 30, 2006, the New York State Supreme Court, Appellate Division, Third Department, annulled the determination and directed DOCS to expunge all references to this matter from plaintiff's institutional record due to the CHO's improper denial of several of plaintiff's requests for documents and witnesses.  Dkt. #41, pp.157-159.

By Letter dated January 5, 2007, Deputy Commissioner Anthony Annucci advised Ricky Caldwell that

> The fact that a Tier III inmate disciplinary determination against you has been reversed and expunged does not, necessarily, affect the ability of your wife, Charlette Caldwell, to engage in visitation.  Your wife's privilege to visit was revoked in accordance with Department Directive #4403, "Inmate Visitor Program."  Your wife challenged the revocation and was afforded a visitation hearing.  On July 11, 2005, after a hearing was held, Commissioner's Hearing Officer Curtis P. Drown upheld the revocation.  That decision was never reversed upon administrative appeal or through the courts.
>
> Notwithstanding the foregoing, in accordance with Section VII.F. of Department Directive #4403, your wife may request a reconsideration of the revocation at any time after it has been in effect for one (1) year and on an annual basis thereafter.

Dkt. #1-2, p.34.

By letter dated March 13, 2007, Great Meadow Correctional Facility Superintendent, Darwin LaClair restored Charlette Caldwell's visiting privileges effective May 1, 2007.  Dkt. #51, p.4.

Plaintiffs commenced this action on November 3, 2009.  Dkt. #1.  By Order entered March 18, 2010, the Hon. Michael A. Telesca, U.S.D.J., dismissed plaintiffs' claims against Investigator Hawes and also dismissed plaintiffs' claims against the remaining defendants in their official capacities.  Dkt. #8.  Plaintiff Charlette Caldwell asserts a claim of denial of due process with respect to the revocation of her visiting privileges against Superintendent West, CHO Drown, and Associate Counsel Mancini.  Dkt. #1.  Plaintiffs also claim that Superintendent Woods violated their constitutional rights by denying their request for reinstatement of visitation privileges and that Deputy Commissioner Annucci, Director Selsky, Superintendent LaClair violated their constitutional rights by failing to reinstate their visitation privileges immediately following the Third Department's reversal of the disciplinary proceeding. Dkt. #1.  Finally, plaintiff Ricky Caldwell asserts a claim of denial of due process with respect to the disciplinary hearing against Commissioner Goord, Superintendent West and CHO Wenderlich, .  Dkt. #1.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Statue of Limitations as to Charlette Caldwell's Claims**

   In lieu of answer, defendants West, Mancini and Drown move for summary judgment on the ground that plaintiff Charlette Caldwell's due process claim with respect to the revocation of her visitation privileges is untimely.  Dkt. #26, p.7.

   Plaintiff asserts that her claim did not accrue until the Third Department reversed the disciplinary determination on November 30, 2006.  Dkt. #30, pp.10-11.  Alternatively, plaintiff contends that the accrual date should be May 1, 2007, the date her visiting privileges were restored.  Dkt. #51, p.1.

   The statute of limitations for an action commenced in New York pursuant to 42 U.S.C. § 1983 is three years.  *Owens v. Okure*, 488 U.S. 235, 251 (1989).  The accrual date for such a claim is a question of federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  "The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action."  *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981).

   In the instant case, the elements of plaintiff's claim of denial of due process in the course of the decision to suspend her visitation privileges existed no later that September 2, 2005, the date when DOCS upheld the decision to suspend her visitation privileges. Dkt. #25, p.12.  As plaintiff's claim, to be timely, should have been filed no later than September 2, 2008, but wasn't filed until November 3, 2009, this aspect of defendants' motion for summary judgment is granted.

**Right to Visitation**

In lieu of answer, defendants West, Mancini, Wood, LaClair, Annucci and Selsky move for summary judgment on the ground that plaintiffs' have no constitutional right to visitation.  Dkt. #26, pp.8-9.

Plaintiffs respond that they possess a liberty interest in contact visits.  Dkt. #30, pp.11-12.

"Protected liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).  It is clear, however, that  "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause. *Id.* at 461 (internal quotation omitted).  Nor can it be said that New York has created a protected liberty interest in visitation as "[i]t is well-established that contact visits are a *privilege* for inmates, not a *right*." *Saxon v. Goord*, No. 06-CV-826, 2007 WL 1695582, at *4 (W.D.N.Y. June 7, 2007); *See Midalgo v. Bass*, No. 9:03-CV-1128, 2006 WL 2795332, at *16 (N.D.N.Y. Sept. 26, 2006) ("family visitations for inmates only constitute a privilege and not a right.").

Although plaintiffs proceed on a due process claim, the Court notes that restrictions on inmates visitation privileges do not infringe on First Amendment rights of association where, as here, *inter alia*, the restrictions bear a rational relation to

-8-

legitimate penological interests and alternate means of communication are available. *Overton v. Bazzetta*, 539 U.S. 126, 131-36 (2003); *Hernandez v. McGinnis*, 272 F. Supp.2d 223, 227 (W.D.N.Y. 2003).  Similarly, the Court also notes that denial of visitation for a limited time does not amount to the sort of wanton infliction of pain prohibited by the Eighth Amendment. *Overton*, 539 U.S. at 137; *Zimmerman v. Burge*, No. 06-CV-176, 2008 WL 850677, at *14 (N.D.N.Y. March 28, 2008) (collecting cases); *Hernandez*, 272 F. Supp.2d at 227.

Accordingly, the motion for summary judgment is granted with respect to plaintiffs' claim that their constitutional rights were violated by Superintendent Woods, Deputy Commissioner Annucci, Director Selsky, Superintendent LaClair's refusal to reinstate their visitation privileges.

**Lack of Personal Involvement by Goord and West**

In lieu of answer, defendants Goord and West move for summary judgment on the ground that they lacked personal involvement in the alleged denial of due process in the course of plaintiff Ricky Caldwell's disciplinary hearing.  Dkt. #43, pp.12-14. Defendants do not oppose the claim going forward against defendant Selsky, even though he is not named as a defendant in this claim.  Dkt. #43, p.12.

Plaintiffs respond that Commissioner Goord is subject to supervisory liability. Dkt. #30, p.12.

It is clear, however, that there is no respondeat superior liability in § 1983 cases. *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). To the contrary, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon*, 58 F.3d at 873 (internal quotation omitted). As there is no allegation that either Commissioner Goord or Superintendent West were personally involved in the inmate disciplinary proceeding, this aspect of defendants' motion is granted.

**Plaintiffs' Cross-Motion for Summary Judgment**

As to the remaining denial of due process claim, plaintiffs argue that the reversal of the disciplinary finding by the Appellate Division demonstrates their entitlement to summary judgment. Dkt. #30, p.3.

As defendants correctly assert (Dkt. #43, pp.10-12), a favorable decision in an article 78 proceeding does not establish a federal due process claim. "Federal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990). "[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires. *Id.* (internal quotation omitted). Accordingly, plaintiffs' motion for summary judgment is denied.

**CONCLUSION**

For the reasons set forth above, plaintiffs' motion for summary judgment (Dkt. #29), is denied and defendants' motion for summary judgment (Dkt. #24), is granted except with respect to plaintiff Ricky Caldwell's cause of action for denial of due process in the course of an inmate disciplinary proceeding against defendants Selsky and Wenderlich, who are directed to file an Answer with respect to these allegations no later than **April 19, 2013.**

**SO ORDERED.**

DATED:     Buffalo, New York
           March 27, 2013

                         __s/ H. Kenneth Schroeder, Jr.__
                         **H. KENNETH SCHROEDER, JR.**
                         **United States Magistrate Judge**